IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>LEWIS CROFT,<br><br>Defendant. | CV 19–41–M–DWM<br><br>ORDER and DECLARATORY JUDGMENT |

Plaintiff State Farm Mutual Automobile Insurance Company has filed a motion for default judgment against Defendant Lewis Croft. (Doc. 14.) No response has been filed. For the reasons stated below, default judgment is appropriate.

**BACKGROUND**

A. The Underlying Action

State Farm seeks a declaratory judgment that the auto policies issued to Croft provide no coverage for claims and damages sought in an action currently pending in state court, *K.B., J.C. v. Lake County Public Health Dep't*, Lake County Cause No. DV 17-184. (Doc. 6.) The state court action asserts six causes of action based on Croft's alleged sexual assault of his granddaughters from 1994 to 2007.

1

(*See id.* at ¶¶ 12, 19, 22.) The underlying complaint alleges that "[t]he sexual abuse took place in the home of Mary Croft and Lewis Croft, as well as [in] Lewis Croft's car, his garage, on camping trips, and at almost every opportunity he had to be alone with" his granddaughters. (Doc. 6-2 at 3.) Only two counts are asserted against Croft directly, which allege that Croft (1) sexually assaulted his granddaughters and (2) negligently inflicted emotion distress on them and their close family members. (Doc. 6 at ¶¶ 23, 24.) The State Farm policies at issue provided coverage for 9 vehicles at unknown periods of time, including three campers. (*See id.* at ¶ 7.)

State Farm undertook Croft's defense in the underlying action under a reservation of rights and is presently providing that defense through separate legal counsel. (*Id.* at ¶ 28.) But, State Farm contends that the auto policies at issue only cover "accidents and losses" that result from the "ownership, maintenance or use of" an insured's vehicle. (*Id.* at ¶ 29.) Thus, sexual assault is not covered because it is an intentional act unrelated to the use of a vehicle. (*Id.* at ¶¶ 30–31.) State Farm seeks a declaration that it has no duty to defend (Count 1) or indemnify (Count 2). (*Id.* at ¶¶ 32–42.)

### B. Procedural History

State Farm initially filed its complaint against Defendants Lewis and Mary Croft on March 7, 2019. (Doc. 1.) On April 15, 2019, State Farm was given an

extension of time to serve the complaint, (Doc. 5), and on June 21, 2019, State Farm filed its First Amended Complaint, (Doc. 6). The First Amended Complaint is substantially similar to the original complaint, but no longer names Mary Croft as a defendant. State Farm then served Lewis Croft on June 29, 2019, and his answer was due on July 22, 2019. (*See* Doc. 8.) No answer was filed. On October 8, 2019, State Farm was ordered to seek default or show cause why the case should not be dismissed. (Doc. 9.) State Farm sought default on October 15, 2019, (Doc. 10), and the clerk entered default the same day, (Doc. 12). On November 1, 2019, State Farm filed the current application for default judgment. (Doc. 14.) On November 4, 2019, Croft was served with both the default and the application. (*See* Docs. 16, 17.) Croft has neither appeared in the case nor filed a responsive pleading.

## ANALYSIS

A district court's "decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Although the court should consider and weigh relevant factors as part of the decision-making process, it "is not required to make detailed findings of fact." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). The following factors may be considered in deciding whether default judgment is appropriate under Rule 55(b): (1) the possibility of prejudice to the plaintiff, (2) the merits of

the claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of factual disputes, (6) whether default is due to excusable neglect, and (7) the policy favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In considering the merits and sufficiency of the complaint, the court accepts as true the complaint's well-pled factual allegations. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). Having reviewed the Amended Complaint, (Doc. 6), and Application for Entry of Default Judgment, (Doc. 14), the *Eitel* factors favor default judgment in this case.

### A. Possible Prejudice

The first *Eitel* factor weighs in favor of default judgment. Croft failed to respond to the amended complaint or otherwise appear in this action despite being served with the amended complaint, the application for default, and the motion for default judgment. (*See* Docs. 8, 16, 17.) If default judgment is not granted, State Farm "will likely be without other recourse for recovery." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). The prejudice to State Farm in this regard supports the entry of default judgment.

### B. Merits of the Claim and Sufficiency of Complaint

The second and third *Eitel* factors favor default judgment where, as here, the complaint sufficiently states a plausible claim for relief under the Rule 8 pleading standards. *Danning v. Lavine*, 572 F.2d 1386, 1388–89 (9th Cir. 1978). State

4

Farm seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. (*See* Doc. 1.) The Act provides that in a case of actual controversy in its jurisdiction, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." § 2201(a).

### 1. Duty to Indemnify

The merits of State Farm's request for declaratory judgment are clear and not reasonably subject to dispute. The underlying state court action alleges that Croft sexually assaulted his granddaughters and caused emotional distress to both them and their close family members. (Doc. 6 at ¶¶ 23, 24.) But the policies at issue require that the injuries be "caused by [an] accident resulting from the ownership, maintenance or use" of a vehicle. (*See* Doc. 6-1 at 9.) Because the alleged injuries were caused by Croft's intentional conduct and an intentional act is not ordinarily an accident, there is no coverage under the policies.[1] *See Farmers*

---

[1] The "use" of a vehicle raises a close question. Generally, when a vehicle is merely the situs of the injury, there is not a sufficient connection to "use." *See Wesco Ins. Co. v. Gonzalez*, 2015 WL 12659911, at *6 (C.D. Cal. Feb. 6, 2015); *Peters v. Firemen's Ins. Co.*, 67 Cal. App. 4th 808, 814 (Cal. 1998); *Am. Nat'l Prop. & Cas. Co. v. Julie R.*, 76 Cal. App. 4th 134, 142 (Cal. 1999). However, three of the vehicles at issue here are campers, which have a much broader use than a typical transportation vehicle. *C.f. Gradillas v. Lincoln Gen. Ins. Co.*, 2012 WL 6020094, at *9–10 (N.D. Cal. Dec. 3, 2012) (finding that sexual assault on party bus arose out of the "use" of the bus). However, because Croft's conduct and its consequences were intentional, the Court makes no finding as to the second issue of whether it arose out of the "use" of a vehicle.

*Union Mut. Ins. v. Kienenberger*, 847 P.2d 1360, 1361 (Mont. 1993) (affirming summary judgment for insured on grounds that rape was an intentional act). While the Montana Supreme Court has clarified that "an 'accident' may include intentional acts," it has determined that "coverage is excluded when the consequences of those acts are objectively intended or expected from the standpoint of the insured." *Employers Mut. Cas. Co. v. Fisher Builders, Inc.*, 371 P.3d 375, 379 (Mont. 2016). "Virtually every court which has considered the question has held that an adult's sexual assault of a child does not constitute an occurrence or accident for coverage purposes, because the intent to harm is inferred from the act itself." *Allstate Ins. Co. v. Nishibata*, 2007 WL 510136, at *4 (D. Haw. Feb. 12, 2007) (collecting cases); *see also N.H. Ins. Grp. v. Strecker*, 798 P.2d 130, 131–32 (Mont. 1990) (father who molested his minor daughter for over 10 years could expect the personal injuries that followed, including medical treatment and emotional distress, regardless of his protestations to the contrary). Thus, there is no coverage under the policies at issue here.

### 2. Duty to Defend

Notwithstanding the lack of coverage, "[t]he duty to defend is independent from and broader than the duty to indemnify created by the same insurance contract." *Farmers Union Mut. Ins. Co. v. Staples*, 90 P.3d 381, 385 (Mont. 2004).

"The duty to defend arises when a complaint against an insured alleges facts, which if proven, would result in coverage." *Id.* "Unless there exists an unequivocal demonstration that the claim against the insured does not fall within the insurance policy's coverage, an insurer has a duty to defend." *Id.* Here, there are no outstanding factual disputes as to the nature of Croft's intentional conduct, which amounts to an "unequivocal demonstration" that the claims against him do not fall within the policies' coverage. *See Landa v. Assurance Co. of Am.*, 307 P.3d 284, 289 (Mont. 2013) (affirming determination that insurance company had no duty to defend where "[t]he underlying conduct alleged in [the] complaint is wholly comprised of [the insured]'s intentional acts").

Accordingly, the second and third *Eitel* factors favor default judgment.

### C. Amount at Stake

Under the fourth *Eitel* factor, a court considers the amount of money at stake in relation to the seriousness of the defendant's conduct. Where the plaintiff's claim is for declaratory relief rather than for money damages, some courts have found that this factor weighs in favor of granting default judgment. *See PepsiCo*, 238 F. Supp. 2d at 1177; *see Stillwater Ins. Co. v. Fricker*, 2018 WL 2985255, at *2 (D. Ariz. June 14, 2018). However, "[w]here the declaratory relief sought implicates the parties and merits of a separate action . . . courts have considered the amount at stake in that separate action while weighing the *Eitel* factors."

7

*Stillwater*, at *2.

State Farm asserts, for the purposes of diversity jurisdiction, that the amount in controversy exceeds $75,000. (Doc. 6 at ¶ 3.) But neither party has provided information to discern the amount of money at stake in the state court action. The fourth *Eitel* factor is therefore neutral.

D.   **Possible Factual Disputes**

Given the sufficiency of the amended complaint and Croft's default, "no genuine dispute of material facts would preclude granting [State Farm's] motion." *PepsiCo*, 238 F. Supp. 2d at 1177.

E.   **Excusable Neglect**

State Farm properly served Croft with the summons and complaint. (*See* Doc. 8.) It is therefore unlikely that Croft's failure to answer and the resulting default were due to excusable neglect. *See Stillwater*, at *3. This factor weighs in favor of default judgment.

F.   **Policy Favoring Merits Decision**

The last factor usually weighs against default judgment given that cases "should be decided up on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. "[T]he mere existence of [Rule] 55(b), however, indicates that this preference, standing alone, is not dispositive." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (internal quotation marks omitted). Moreover, Croft's failure to respond to

the amended complaint "makes a decision on the merits impractical, if not impossible." *Id.* Default judgment is therefore appropriate.

## CONCLUSION

Five of the seven *Eitel* factors favor default judgment and two factors are neutral. Default judgment is therefore appropriate. Accordingly,

IT IS ORDERED:

(1)    State Farm's motion for default judgment (Doc. 14) is GRANTED.

(2)    Default judgment is entered in favor of State Farm and against Defendant Lewis Croft on State Farm's claim for declaratory relief as follows: State Farm has no duty to defend or indemnify Lewis Croft in the underlying case under the State Farm policies at issue.

(3)    The clerk is directed to close the case file.

DATED this 25 day of November, 2019.

14:19 P.M.

Donald W. Molloy, District Judge
United States District Court